(112 App. Div. 765)

## WAKLEY v. KING.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

**1. CONTRACTS—DURESS—QUESTION FOR JURY.**

Defendant's testator was a married man living with his wife and family. For about 20 years he had maintained secret illicit relations with plaintiff, a married woman living apart from her husband. Testator was a man of strong mind and will, engaged in large business transactions, and left an estate valued at $100,000. He discontinued maintaining plaintiff in January, 1900, when in consideration of $12,000 she executed a general release to him. Prior to August, 1900, plaintiff discovered that testator had seduced her minor daughter, and a settlement was made by which testator agreed to pay for the benefit of the daughter $500 a year for 20 years. A settlement was also made with plaintiff's husband in March, 1901, by which the husband, in consideration of $10,000, executed a release to testator. About this time plaintiff discovered that, while testator was maintaining relations with her, he was also having illicit relations with her sister, and this resulted in an agreement by which testator agreed to pay to the sister's brother, in trust for her, $1,500, and at the same time he executed the contract in question, agreeing to pay plaintiff $500 a year for 15 years, and not to revoke a provision in his will made in plaintiff's favor, provided plaintiff kept the contract on her part to make no further demands. Testator paid installments on plaintiff's contract until he died, and three days before his death he made a new will, affirming the provision in a former will in plaintiff's favor. *Held*, that the contract with plaintiff was not void as a matter of law, as obtained by duress.

**2. SAME—BREACH.**

Prior to the making of such contract, a magnetic healer had instituted suit against plaintiff for services, alleging in his complaint that testator had seduced plaintiff's minor daughter, and that plaintiff had consulted him in reference to the matter, and agreed to pay him $10 for each consultation, demanding judgment for $590, which plaintiff in her answer in such suit denied. After the contract was made, plaintiff wrote advising testator that a settlement of this suit could be made for $500 and attorneys' fees, and asking his advice, stating that she would pay the whole amount if testator said so. Testator's attorneys directed her to settle, and offered to pay half of the amount, which they subsequently did. *Held*, that such transaction did not constitute a breach of the contract on plaintiff's part relieving testator from further performance.

Appeal from Trial Term, Warren County.

Action by Mary Wakley against H. Prior King, as executor of William Moore, deceased. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

This is an appeal by the plaintiff from a judgment entered in Warren county dismissing the plaintiff's complaint upon the merits on a verdict by direction of the court, and from an order denying the plaintiff's motion for a new trial upon the minutes. The action is brought to recover an installment of $500 which became due upon a contract July 1, 1904, from defendant's testator to the plaintiff. The contract was made under seal June 29, 1901, and provided for the payment of $500 for each year for 15 years from its date. The prior installments were paid. The testator died November 21, 1903. The contract also provided that the testator was not to revoke a provision in his will, dated June 29, 1900, in favor of the plaintiff. It recites as its consideration that the plaintiff has surrendered all the testator's letters and writings in her possession and under her control, and will not make any demand or claim upon him, or his representative, growing out of any matters prior thereto, except a contract of August 8, 1900, and that the pay-

ments to her shall only continue so long as she keeps said contract on her part, and shall be null and void in case of her default. The defendant was a married man, living with his wife and family, and for about 20 years had maintained secret illicit relations with the plaintiff, a married woman living apart from her husband. He was about 67 years of age at the time of his death, a man of strong mind and will, engaged in large business transactions, and had the personal direction and control of his business to the time of his death. He left an estate of the value of $100,000. He discontinued his maintenance of the plaintiff and ceased to visit her prior to January 27, 1900, and at that time, in consideration of $12,000, she executed a general release to him.

Prior to August 8, 1900, she discovered that he had seduced her minor daughter, and a settlement was made by which the daughter, her husband, and the plaintiff made a release to him, and he made an agreement with the plaintiff, as trustee for the daughter, to pay her $500 per year for 20 years. Prior to March, 1901, the plaintiff's husband had threatened him with legal proceedings, and about March 30, 1901, the husband executed a release to him, and he paid the husband $10,000. About this time the plaintiff discovered that, while he was maintaining relations with her, he was having illicit relations with her sister, Mrs. Brown. Many letters were written by plaintiff to him. His part of the correspondence was presumably returned to him when the contract in suit was executed, so that but one side of the correspondence is produced. She claimed that in order to save his good name and to keep secret their relations and his relations with the daughter and the sister, and to pacify the husband, she had necessarily expended a great part of the money she had received, and she demanded that he make proper reparation to the sister, and that he make some further provision for her support, which correspondence finally resulted in the contract in suit, and an agreement of the same date by which he was to pay to John D. Wakley, the brother of the sister, in trust for the latter, $1,500. Prior to the agreement in suit, a so-called magnetic healer, at Buffalo, brought an action against plaintiff for his services and his instructions to her, and also alleged in his complaint that said Moore had seduced the plaintiff's minor daughter, and the plaintiff had consulted him with reference to the matter at various times, and was to pay him $10 for each consultation, and had had 50 consultations with reference to said matter, and demanded judgment for $590. In her answer she denied that the treatment or instruction received by her was of any value, and denied the employment, or any agreement to pay him with reference to the matter of the daughter. After the contract in suit was made, she wrote testator that there was an opportunity to settle that action out of court, and advised with him whether the suit better be settled by paying $500 and attorney's fees, saying: "What you and I know is that our affairs all told are better kept out of court. Your reply will decide me, and if he won't settle for $500 before court begins, I will pay the whole amount, if you say so." His attorneys replied to this letter to settle, and he would pay one-half the amount. She did settle, and then claimed that the attorneys would not remit his half and were resorting to unnecessary delays and requirements, and in very vigorous language required that the money be paid at once. It was finally paid. After this claim was settled he paid several installments upon the contract in suit, and three days before his death re-executed his will, and in it incorporated the provision which in said contract he had agreed to retain for the plaintiff's benefit. The trial court felt that the contract in suit was obained by duress, but placed its decision upon the ground more particularly that the contract was one for peace, and she had violated it by bringing up the Buffalo suit and the correspondence with relation to it. Several letters are in evidence written by Moore to the plaintiff in March, April, May, June, July, August, and September, 1903, of a friendly nature, telling her of his bad health and more particularly of the condition from time to time of his wife, who was then in a critical condition, and in the letter of September 24, 1903, he returns her a clipping relating to the Van Rensselaer estate. The provision in the testator's will for her, and which was to be retained by the contract, relates to his interest in said estate. He tells her he returns the clipping, and she had better preserve it; that the name in it might be of use.

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-LOGG, and COCHRANE, JJ.

Chambers & Finn (J. A. Kellogg, of counsel), for appellant.

Edward M. Angel, for respondent.

JOHN M. KELLOGG, J. Whether the agreement in suit was obtained by duress was clearly a question of fact for the jury. This is especially so when we consider the voluntary payments made by the testator upon it, and the making of his last will three days before his death, of which she could have no knowledge until after his death, reaffirming to her the provision which he in this contract had agreed would not be revoked. It is not clear that the letters written by the plaintiff were much different than would be written by the ordinary woman who had given the greater part of her life to him, and it is not clear that she was demanding any more than under all the circumstances was a reasonable and adequate provision which he fairly ought to make for the wrong done her. Neither is it clear that in making the contract he was actuated by fear or was the subject of duress. It may be that the correspondence had quickened his conscience, and led him to believe that he was not treating the plaintiff properly in discarding her in her old age without further provision for her support. He was a man of strong mind and will, and apparently able to take care of himself. He either destroyed his letters which were returned to him, or his estate has suppressed them, and the correspondence in evidence cannot be fully understood without drawing inferences as to what the letters written by him contained. Something may be inferred as to their contents from the tenor of her answers to him, and something from his letters which were written her after the contract in suit was made. If he feared for his good name and valued it higher than the money involved, it is evident that his estate does not take the same view of the matter. It cannot be said as a matter of law that he was coerced into making the agreement, or that it was anything more than what he deemed a suitable and proper reparation to her under all the circumstances. It cannot be said as matter of law that the correspondence with reference to the Buffalo suit was a violation of the contract in suit, and forfeited her rights. She had the right to advise with him about the settlement of the suit and to inquire whether he thought it ought to be settled in order to keep the scandal from coming to the public. It is evident that both of them had spent a great part of their lives in trying to keep their affairs from the public. In any event, after this correspondence, and after he paid the money, he recognized the agreement as binding by continuing the payments upon it, and his correspondence showed a good feeling towards the plaintiff, and his will indicates clearly that she was still the subject of his solicitude, and that he desired to carry out his contract with her. It was error to direct a verdict against the plaintiff.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the plaintiff to abide the event. All concur.